**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LATASHA RODGERS, ON BEHALF OF HER MINOR CHILD CJTJ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-16303** |
| **SHERIFF MARLIN GUSMAN, ET AL.** | **SECTION: "G" (3)** |

## ORDER

In this litigation, Plaintiff Latasha Rodgers, Tutrix ("Plaintiff"), on behalf of her minor child CJTJ, alleges that Defendants Orleans Parish Prison, Sheriff Marlin Gusman, the City of New Orleans, Mayor Mitch Landrieu, the New Orleans City Council, Correct Care Solutions, LLC ("CCS") and certain unidentified parties acting under the authority of the Orleans Parish Prison (collectively "Defendants"), subjected CJTJ's father ("Decedent"), a pretrial detainee at the Orleans Parish Prison, to excessive force, assaulted and battered Decedent, and acted with deliberate indifference to his medical needs, resulting in Decedent's death, in violation of his and Plaintiff's constitutional rights under the Fourth, Eighth, and Fourteenth Amendments, and Louisiana law.[1] Before the Court is CCS' "Motion to Dismiss."[2] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court will grant the motion to dismiss Plaintiff's claims under 42 U.S.C. § 1983 and deny the motion to dismiss Plaintiff's state law negligence claim.

---

[1] Rec. Doc. 143 at 1–5.

[2] Rec. Doc. 146.

1

# I. Background

### A.    *Factual Background*

In the second amended complaint, Plaintiff avers that on September 24, 2015, Decedent was a pretrial detainee at the Orleans Parish Prison ("OPP").[3] Plaintiff asserts that Decedent had previously been diagnosed with Sickle Cell Disease and Hepatitis C, which was verified by CCS and the Orleans Parish Sheriff's Office ("OPSO") during Decedent's intake process.[4] Plaintiff alleges that since October 2015, Decedent had experienced leg pain and medical complications in the chest and abdomen.[5] According to Plaintiff, however, the OPSO and CCS failed to provide Decedent with his medication or take him to the hospital as needed.[6]

According to Plaintiff, Decedent experienced a severe sickle cell pain crisis in his abdomen and lower extremity, chest, back, and left leg on November 11, 2015, but was not taken to the hospital until the next day on November 12, 2015.[7] While Decedent was at University Medical Center, Plaintiff avers, his condition worsened—he became diaphoretic and unresponsive, had problems breathing, and on November 15, 2015, he died.[8] Plaintiff alleges that Defendants' conduct demonstrates a "wanton disregard" for Decedent's "serious medical needs."[9]

According to the second amended complaint, CCS is a "company that provides health

---

[3] Rec. Doc. 143 at 4.

[4] *Id.*

[5] *Id.* at 4–5.

[6] *Id.*

[7] *Id.* at 4.

[8] *Id.* at 6–7.

[9] *Id.*

services to the Orleans Parish Prison acting under the authority of the Orleans Parish Sheriff's Office and the City of New Orleans."[10] Plaintiff alleges that CCS was responsible for ensuring that Decedent's emergent and urgent health needs were met, but CCS acted with deliberate indifference to Decedent's severe medical needs, causing the death of Decedent.[11]

**B.    *Procedural Background***

Plaintiff filed a complaint on November 10, 2016.[12] On December 12, 2016, Defendant Marlin Gusman filed an answer to the complaint.[13] On February 6, 2017, the Court granted Defendant Orleans Parish Sheriff Office's motion to dismiss,[14] and dismissed all claims pending against OPSO.[15] On March 27, 2017, Defendants Mayor Mitch Landrieu and the New Orleans City Council filed a motion to dismiss.[16] On October 16, 2017, the Court denied the motion to dismiss without prejudice and granted Plaintiff leave to amend the complaint to address the deficiencies noted therein.[17]

On November 17, 2017, Plaintiff filed the first amended complaint.[18] On March 7, 2018, Defendant CCS filed a motion to dismiss, arguing that Plaintiff failed to state a claim because: (1)

---

[10] *Id*. at 3.

[11] *Id*. at 8–9.

[12] Rec. Doc. 1.

[13] Rec. Doc. 4.

[14] Rec. Doc. 5.

[15] Rec. Doc. 7.

[16] Rec. Doc. 12.

[17] Rec. Doc. 31.

[18] Rec. Doc. 45.

Plaintiff did not identify a policy, procedure or practice as required under 42 U.S.C. § 1983; (2) Plaintiff's claims do not rise to a level of deliberate indifference; and (3) Plaintiff failed to show the breach of any duty by CCS.[19]  On July 18, 2018, the Court denied the motion to dismiss without prejudice.[20]  The Court concluded that Plaintiff had not stated a claim pursuant to 42 U.S.C. § 1983 or Louisiana Civil Code Article 2315 against CCS.[21]  However, the Court noted that the parties had recently learned that autopsy materials from Decedent's autopsy, which the parties previously believed were unavailable, may still exist and could shed light on the cause of Decedent's death and any potential liability by CCS.[22]  Therefore, rather than dismissing Plaintiff's claims against CCS at that time, the Court granted Plaintiff leave to amend the complaint by August 17, 2018.[23]

On August 17, 2018, Plaintiff filed a motion for an extension of time to amend the complaint, arguing that she was still unable to obtain the autopsy records.[24]  On August 22, 2018, Defendant CCS filed a motion to dismiss based on Plaintiff's failure to amend the complaint.[25]  On August 28, 2018, Magistrate Judge Knowles denied Plaintiff's motion for an extension to amend.[26]  On September 6, 2018, Plaintiff filed an opposition to the motion to dismiss, requesting additional time to obtain the autopsy materials from the Orleans Parish Coroner's Office in order

---

[19] Rec. Doc. 89.

[20] Rec. Doc. 110.

[21] *Id.* at 18.

[22] *Id.* at 17.

[23] *Id.* at 18.

[24] Rec. Doc. 112.

[25] Rec. Doc. 120.

[26] Rec. Doc. 124.

to adequately respond to the motion to dismiss.[27]

On December 21, 2018, the Court held a hearing regarding an Order to Show Cause why Plaintiff's counsel should not be sanctioned for her failure to diligently litigate this matter.[28] At the hearing, Plaintiff's counsel stated that she received microscopic slides and tissue samples from the Orleans Parish Coroner's Office in September 2018 and that she intended to seek leave of Court to file a second amended complaint based on this information.[29] The Court granted Plaintiff leave to amend the complaint within seven days of the December 19, 2018 hearing.[30] On December 26, 2018, Plaintiff filed a second amended complaint.[31]

In the second amended complaint, Plaintiff brings the following claims: (1) a wrongful death claim under 42 U.S.C. § 1983; (2) a survival claim under 42 U.S.C. § 1983; (3) a claim for deliberate indifference under 42 U.S.C. § 1983; (4) a negligence claim under Louisiana law; and (5) an assault and battery claim.[32] On January 9, 2019, CCS filed a motion to dismiss the second amended complaint.[33] On January 23, 2019, Plaintiff filed an opposition.[34] With leave of Court, CCS filed a reply on February 6, 2019.[35]

---

[27] Rec. Doc. 125.

[28] Rec. Doc. 142.

[29] *Id.*

[30] Rec. Doc. 142.

[31] Rec. Doc. 143.

[32] *Id.* at 11–17.

[33] Rec. Doc. 146.

[34] Rec. Doc. 155.

[35] Rec. Doc. 160.

## II. Parties' Arguments

### A.    *CCS' Arguments in Support of Motion to Dismiss*

In the motion, CCS argues that Plaintiff's claims should be dismissed because (1) Plaintiff does not identify any policy, procedure, or practice by CCS that was a moving force behind the alleged constitutional violations, (2) Plaintiff's claims do not rise to a level of deliberate indifference; and (3) Plaintiff has failed to show the breach of any duty by CCS.[36]

First, CCS contends that there is no basis to hold it liable for the alleged deprivation of Decedent's civil rights because Plaintiff does not identify an official policy or custom that was the moving force behind the alleged constitutional violations.[37] CCS argues that Plaintiff's only allegations regarding a policy is Plaintiff's presentation of CCS' policy regarding screening and an initial health assessment.[38] CCS contends that the allegation regarding its policy works against Plaintiff's position because it proves that CCS had standards in place to provide treatment for Decedent.[39] CCS then alleges that Plaintiff's identification of a policy is really an attempt to prove that CCS was "not following its own internal policies," and violated the policies in some respect.[40] CCS contends that asserting a lack of compliance with a policy is not the same as identifying a policy that itself constituted a violation of rights.[41] Therefore, CCS avers that Plaintiff fails to plead a policy

---

[36] Rec. Doc. 146-1 at 1–2.

[37] *Id.* at 5.

[38] *Id.* According to Plaintiff, the policy states: "This policy is intended to ensure receiving screenings are performed on all inmates on arrival at the intake facility to ensure that emergent and urgent health needs are met."

[39] *Id.*

[40] *Id.*

[41] *Id.*

as required under the *Monell* standard, and Plaintiff's claims should be dismissed.[42]

Second, CCS argues that Plaintiff does not plead a claim for deliberate indifference because Plaintiff does not allege that Decedent was denied or ignored treatment when he sought treatment from CCS.[43] CCS points to multiple dates that Plaintiff lists in the complaint as days on which Decedent was examined by CCS.[44] CCS also highlights the fact that Plaintiff includes details on Decedent being taken to the hospital the same day that CCS examined him.[45] CCS concludes by arguing that deliberate indifference claims under the U.S. Supreme Court case *Estelle v. Gamble*,[46] are only cognizable against individual defendants and not corporate entities.[47] For these reasons, CCS avers that Plaintiff's deliberate indifference claim should be dismissed.[48]

Finally, CCS asserts that Plaintiff's state law negligence claim should be dismissed because Plaintiff fails to identify how CCS breached its policy or how any breach caused Plaintiff's death.[49] CCS argues that Plaintiff alleges facts showing that CCS complied with its policies, including Decedent's initial screening and several subsequent examinations.[50] CCS contends that Plaintiff fails to allege any facts showing what policy CCS breached on November 12, 2015 when Decedent

---

[42] *Id.* at 5–6.

[43] *Id.* at 6.

[44] *Id.* at 6–7.

[45] *Id.*

[46] 429 U.S. 97 (1976).

[47] Rec. Doc. 146-1 at 6–7.

[48] *Id.* at 7.

[49] *Id.* at 8.

[50] *Id.*

was hospitalized, or how that alleged breach contributed to Plaintiff's death.[51]  Because CCS avers

that Plaintiff does not plead a duty, breach, or causation related to Decedent's death, CCS asserts

that Plaintiff fails to state a claim for negligence.[52]  Therefore, CCS contends that all of Plaintiff's

claims against CCS should be dismissed.[53]

**B.      *Plaintiff's Arguments in Opposition to the Motion to Dismiss***

In opposition, Plaintiff asserts that she pleads allegations sufficient to prove constitutional

violations under § 1983, deliberate indifference, and negligence.[54]  First, Plaintiff contends that

she fully identifies CCS' policy or custom that violated Decedent's rights because the second

amended complaint presents CCS' policy related to its intake procedure and then the second

amended complaint highlights CCS' violations of its "announced policies or customs."[55]  Plaintiff

points to allegations in the second amended complaint regarding CCS' failure to record Decedent's

medical ailments and complaints, failure to properly maintain medical documents, and failure to

promptly transport Decedent to the hospital during his sickle cell crisis.[56]

Plaintiff also asserts that the second amended complaint includes CCS' chronic disease

policy which states that "CCS is to evaluate patients with a chronic disease on a continuous basis,"

and that a chronic disease treatment plan will be completed when appropriate.[57]  Plaintiff points to

---

[51] *Id.*

[52] *Id.*

[53] *Id.* at 8–9.

[54] Rec. Doc. 155 at 7–14.

[55] *Id.* at 9.

[56] *Id.* 10–11.

[57] *Id.* at 12.

allegations in the second amended complaint stating that CCS failed to develop a chronic disease treatment plan, failed to test Decedent to monitor his medical condition, and delayed in responding to Decedent's multiple health complaints throughout his time at the jail.[58] Plaintiff contends that CCS' actions fell below the medical community's standards and CCS' stated policies, and CCS' failures "w[ere] the principal factor in Decedent's death."[59] Based on these allegations, Plaintiff asserts that she clearly pleads CCS' policy that was the moving force behind the constitutional violations—"that CCS would set forth appropriate policies in the abstract, but blatantly disregard the policies in actual practice."[60]

Finally, Plaintiff asserts that the complaint shows "in great detail" how CCS was deliberately indifferent to Decedent's condition and acted negligently in failing to properly treat Decedent.[61] Therefore, Plaintiff argues that she fully pleads each of her claims against CCS and the Court should deny the motion to dismiss.[62]

## C.    *CCS Arguments in Further Support of the Motion to Dismiss*

In reply, CCS notes that Plaintiff's main argument is that CCS failed to comply with its policies.[63] CCS asserts that it is insufficient for Plaintiff to proffer a policy of noncompliance.[64] Instead, CCS insists that Plaintiff must actively identify a policy that itself violated Decedent's

---

[58] *Id.* at 10–13.

[59] *Id.* at 11.

[60] *Id.* at 13.

[61] *Id.* at 14.

[62] *Id.*

[63] Rec. Doc. 160 at 2.

[64] *Id.*

constitutional rights.[65] CCS also argues that Plaintiff does not allege in the actual complaint that CCS was noncompliant with its policies, and "[P]laintiff cannot cure these pleading defects through assertions made in a response to a Motion to Dismiss."[66]

In directly addressing Plaintiff's argument regarding CCS' noncompliance with its policies, CCS argues that Plaintiff only presents conclusory allegations of noncompliance that has "no causal connection to any alleged constitutional violation."[67] CCS highlights that the second amended complaint discusses CCS' compliance in the form of conducting the intake assessment, administering pain medication to Decedent, performing lab tests, evaluating Decedent on a continuing basis, and transferring Decedent to the hospital on November 12, 2015.[68] CCS therefore asserts that "[i]t is unclear [] what internal policies CCS purportedly violated in light of these allegations."[69] For these reasons, CCS asserts that Plaintiff does not properly allege constitutional violations under § 1983.[70]

CCS also contends that Plaintiff only offers conclusory allegations regarding the deliberate indifference and negligence claims.[71] Therefore, CCS contends that all claims against it should be dismissed.[72]

---

[65] *Id.*

[66] *Id.*

[67] *Id.* at 3.

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.* at 4–5.

[72] *Id.* at 5.

### III. Legal Standard

**A.**     ***Legal Standard on Motion to Dismiss***

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[73] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[74] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[75] "Factual allegations must be enough to raise a right to relief above the speculative level."[76] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[77]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[78] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[79] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[80] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[73] Fed. R. Civ. P. 12(b)(6).

[74] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[75] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[76] *Twombly*, 550 U.S. at 556.

[77] *Id.* at 570.

[78] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[79] *Iqbal*, 556 U.S. at 677–78.

[80] *Id.* at 679.

statements" will not suffice.[81] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[82] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[83] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[84] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[85]

**B.    *Corporate Liability Under 42 U.S.C. § 1983***

42 U.S.C. § 1983 provides that every "person" who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects, or "causes to be subjected," any person to the deprivation of any federally protected rights, privileges, or immunities shall be civilly liable to the injured party. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law."[86] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed

---

[81] *Id.* at 678.

[82] *Id.*

[83] *Id.*

[84] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[85] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[86] *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting 42 U.S.C. § 1983).

with the authority of state law.'"[87]  The Supreme Court has held that "[t]o act 'under color' of law does not require that the accused be an officer of the state."[88]

"Under the Supreme Court's 'public function' test, a private entity acts under color of state law 'when that entity performs a function which is traditionally the exclusive province of the state.'"[89]  "Alternatively, state action may be found where there is a nexus between the state and the action of the private defendant such that the action is fairly attributable to the state."[90]  This means "the plaintiff must show: (1) that the deprivation was caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may fairly be said to be a state actor."[91]  A plaintiff can make such a showing by demonstrating that "the private citizen was a willful participant in joint activity with the State or its agents."[92]  However, "State action will not accrue merely because of government acquiescence or approval of the private entity's actions."[93]

However, a corporate entity may not be held liable under Section 1983 based upon a theory

---

[87] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

[88] *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (internal quotation marks and citation omitted).

[89] *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 460 (5th Cir. 2003) (quoting *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989)).

[90] *Wong*, 881 F.2d at 202.

[91] *Priester v. Lowndes Cnty.*, 354 F.3d 414, 423 (5th Cir.), *cert. denied* 543 U.S. 829 (2004) (citing *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988)).

[92] *Id.* at 420 (internal quotation marks omitted) (quoting *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)).

[93] *Id.* at 423 (citing *Yeager v. City of McGregor*, 980 F.2d 337, 342 (5th Cir. 1993)).

of vicarious liability or *respondeat superior*.[94] Instead, "a plaintiff must initially allege that an official policy or custom 'was a cause in fact of the deprivation of rights inflicted.'"[95] "A § 1983 plaintiff . . . may be able to recover from [a corporate entity] without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action was pursuant to a state 'custom or usage.'"[96] "To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom."[97] "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts."[98] "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[99] Finally, the "policymaker must have either actual or constructive knowledge of the alleged policy."[100]

## C.  *Deliberate Indifference*

The Eighth Amendment protects the right to be free from cruel and unusual punishment.[101]

---

[94] *Green v. Albertson's, Inc.*, 67 F. App'x 248, at *2, n.3 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

[95] *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994)).

[96] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 n.10 (1986).

[97] *Id.* (internal citations and quotation marks omitted).

[98] *Id.* (internal citations omitted).

[99] *Colle v. Brazos County, Tex.*, 981 F.2d 237, 245 (5th Cir. 1993) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 820–24 (1985)).

[100] *Cox v. City of Dallas*, 430 F.3d 734, 748–49 (5th Cir. 2005) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

[101] U.S. Const. Amend. VIII.

14

"The Cruel and Unusual Punishment Clause allows an inmate to obtain relief after being denied medical care if he provides there was a 'deliberate indifference to his serious medical needs.'"[102] "Deliberate indifference is an extremely high standard to meet."[103] "Deliberate indifference requires that the official have subjective knowledge of the risk of harm."[104] "To show subjective deliberate indifference, a plaintiff must present evidence: (i) that each defendant had subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn; (ii) that each defendant actually drew that inference; and (iii) that each defendant's response to the risk indicates that the defendant subjectively intended that harm to occur."[105]

### D.    *Negligence Under Louisiana Law*

Plaintiff also asserts that CSS was negligent under Louisiana law. Article 2315 states, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it," and that "[d]amages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person." Louisiana courts use the duty-risk analysis to determine recovery under Article 2315.[106] "For liability to attach under the duty-risk analysis, the plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm or damages, the

---

[102] *Bias v. Woods*, 288 F. App'x 158, 162 (2008) (citing *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

[103] *Blank v. Eavenson*, 530 F. App'x 364, 368 (5th Cir. 2013) (citing *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

[104] *Id.*

[105] *Id.* (citing *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009)).

[106] *Brown v. City of Monroe*, 48,764 (La. App. 2 Cir. 2/26/14); 135 So. 3d 792, 796 (citing *Barrino v. East Baton Rouge Parish School Bd.*, 96–1824 (La. App. 1 Cir. 06/20/97); 697 So. 2d 27)).

defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached."[107]

## IV. Analysis

### A.    *Section 1983 Claim*

In the motion, CCS argues that Plaintiff's § 1983 claims against CCS should be dismissed because Plaintiff does not identify a policy or custom of CCS that was the "moving force" behind the alleged constitutional violations.[108]  As explained above, for CCS, a corporate entity, to be held liable under 42 U.S.C. § 1983, Plaintiff must allege that an official policy or custom "served as a moving force behind the constitutional violation at issue or that [her] injuries resulted from the execution of an official policy or custom."[109]  In the second amended complaint, Plaintiff makes the following allegations regarding CCS' policy or custom.

First, Plaintiff alleges that "Correct Care Solutions' policy on screening and the initial health assessment policy states that, 'This policy is intended to ensure receiving screenings are performed on all inmates on arrival at the intake facility to ensure that emergent and urgent health needs are met.' According to this policy, screening is performed on inmates upon arrival and booking to ensure that emergent and urgent health needs are met."[110]  Second, Plaintiff asserts that "CCS and OPSO's policy, namely the chronic disease policy, states that, 'CCS is to evaluate patients with a chronic disease on a continuous basis.' It further states that, 'a chronic disease

---

[107] *Dennis v. Wiley*, 09–236 (La. App. 2 Cir. 9/11/09); 22 So. 2d 189 *Hardy v. Bowie*, 98–2821 (La. 9/8/99), 744 So.2d 606, 613.

[108] Rec. Doc. 146-1 at 5.

[109] *Spiller*, 130 F.3d at 167.

[110] Rec. Doc. 143 at 8.

treatment plan will be completed when appropriate.'" [111] Third, "Correct Care Solutions (CCS)…violated their own Policies, Procedures, and Practices…"[112] Fourth, "[Decedent] had an emergent health need of the Sickle-Cell diseases 'crisis,' which Defendants CCS and OPSO did not properly attend."[113]

In detailing CCS' alleged violations of its policies and failure to properly treat Decedent, Plaintiff asserts that: (1) CCS failed to obtain hospital records from Decedent's hospitalization that occurred a month prior to his incarceration;[114] (2) CCS conducted an intake screening of Decedent on September 24, 2015, but did not record Decedent's episodes of severe joint pain and cramping;[115] (3) CCS did not record lab studies when Decedent visited the care facility on October 13, 2015;[116] (4) CCS did not render a specific disposition after Decedent received a mental health screening on October 20, 2015;[117] (5) CCS did not document any other medical visits between October 20, 2015 and November 12, 2015;[118] (6) Decedent's symptoms had been progressing during this time but CCS did not act to treat Decedent;[119] (7) "CCS and OPSO failed to implement a treatment plan in order to treat [Decedent] for his chronic disease even though he kept having

---

[111] *Id.* at 9.

[112] *Id.* at 5.

[113] *Id.* at 9.

[114] *Id.* at 9.

[115] *Id.*

[116] *Id.* at 5 –6.

[117] *Id.* at 6.

[118] *Id.*

[119] *Id.* at 7.

the same Sickle-Cell crisis symptoms;" (8) when Decedent presented before CCS on November 12, 2015 with a sickle-cell crisis, CCS delayed for three hours before transferring Decedent to the hospital, and then the private transport took an additional two hours to deliver Decedent to the hospital;[120] and (9) CCS' delayed therapy in addressing these acute medical issues was a key factor in Decedent's death.[121]

CCS challenges these allegations by asserting that the second amended complaint does not identify an actual policy or custom that is the moving force behind the constitutional violations.[122] Rather, CCS insists, the second amended complaint only highlights an alleged failure to comply with policies, and an alleged failure to comply cannot be a moving force behind a constitutional violation.[123] CCS is incorrect, however, when it insists that a failure to comply with medical standards is not a sufficient policy or custom under the *Monell* standard.[124] An entity can be held liable under § 1983 for a policy or custom of failing to provide medical treatment.[125] The true deficiency with Plaintiff's allegations is that Plaintiff does not plausibly allege that CCS had such a policy of failing to provide medical care.

A plaintiff may establish a "policy or custom" under the *Monell* standard by showing "(1)

---

[120] *Id.* at 7–8.

[121] *Id.* at 8.

[122] Rec. Doc. 146-1 at 5.

[123] *Id.*

[124] *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999) ("[I]nadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to "deliberate indifference to [the prisoner's] serious medical needs", "constitut[ing] the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment.") (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

[125] *Cardenas v. Lee Cty., Tex.*, 569 F. App'x 252, 255 (5th Cir. 2014) (analyzing whether Petitioner established that county had policy of denying medical care to inmates).

18

[an] express policy of violating the Constitution, (2) a widespread practice or custom—even if that custom has not received formal approval by an official decision-making body—or (3) a decision by an individual with express policy-making authority."[126] Here, Plaintiff clearly does not plead that CCS had an express policy of failing to provide medical treatment. In fact, Plaintiff alleges the opposite when she includes language from CCS' policies on intake screening, health assessments, and chronic disease treatment. Plaintiff likewise fails to plead that a policymaker within CCS decided that CCS would not provide treatment for Decedent. Thus, the Court must determine whether Plaintiff has pleaded sufficient facts to show that the CCS' alleged failure to provide medical care was a widespread practice or custom.

Under Fifth Circuit precedent, a custom may be evidenced by "a persistent, widespread practice of [] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [corporate] policy ... Actions of officers or employees of a [corporation] do not render the [corporation] liable under section 1983 unless they execute official policy as above defined."[127] This standard requires that "[the] actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [corporate] employees."[128] "Isolated

---

[126] *Cardenas*, 569 F. App'x at 255 (citing *Monell v. Dept. of Social Services of N.Y.,* 436 U.S. 658, 690–91 (1978)).

[127] *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir. 1984) (en banc)).

[128] *Webster*, 735 F.2d at 842.

unconstitutional actions by [corporate] employees will almost never trigger liability,"[129] and "[a] customary [corporate] policy cannot ordinarily be inferred from single constitutional violations."[130]

In the second amended complaint, Plaintiff alleges that CCS failed to maintain adequate records on Decedent, conduct laboratory tests on Decedent, create a chronic care treatment plan for Decedent, respond to Decedent's complaints, monitor Decedent's condition, and promptly transfer Decedent to the hospital.[131] A review of these allegations reveals that Plaintiff only discusses a failure to provide treatment in regard to one person—Decedent. Though these facts may allege that CCS failed to provide treatment to Decedent, they do not establish a persistent or widespread failure by CCS to provide treatment. Plaintiff includes zero allegations that CCS engaged in this behavior before or that CCS failed to provide treatment to other inmates. Thus, Plaintiff only pleads facts that allege one isolated violation. The Fifth Circuit has repeatedly held that "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for [corporate] section 1983 liability."[132] Therefore, based on the allegations in the second amended complaint, Plaintiff does not allege a persistent, widespread

---

[129] *Id.* at 578 (citing *Bennett v. City of Slidell,* 728 F.2d 762, 768 n. 3 (5th Cir. 1984)).

[130] *Id.* at 581.

[131] Rec. Doc. 143 at 5–10.

[132] *Piotrowski*, 237 F.3d at 581 (quoting *Bennett v. City of Slidell,* 728 F.2d 762, 768 n. 3 (5th Cir.1984)); *see also Gates v. Texas Dep't of Protective & Regulatory Servs.,* 537 F.3d 404, 437 (5th Cir. 2008) (finding two instances of unconstitutional conduct insufficient to evince a policy or custom); *Cardenas v. Lee Cty., Tex.*, 569 F. App'x 252, 256 (5th Cir. 2014) ("These two isolated failures in judgment cannot, however, establish a **custom** or **policy** of denying medical care to inmates."); *Arshad ex rel. Arshad v. Congemi*, No. 08-30061, 2009 WL 585633, at *8 (5th Cir. Mar. 9, 2009) (dismissing *Monell* claim for failure to show a "**custom**" where plaintiffs "point to only one similar previous incident").

custom as required by *Monell*.

Additionally, *Monell* liability requires a showing that a policymaker was involved in implementing the policy or was aware of the policy.[133]  Plaintiff does not identify a policymaker at CCS or show that a policy of failure to provide treatment was persistent enough to be known by a CCS' policymaker. Where Plaintiff fails to plausibly allege that a policymaker at CCS had "either actual or constructive knowledge of the alleged policy,"[134] CCS cannot be held corporately responsible for the actions of discrete employees.[135]  "*Monell* and later decisions reject municipal [or corporate] liability predicated on *respondeat superior*."[136] Therefore, Plaintiff does not meet the requirements for alleging a violation under 42 U.S.C. § 1983 and all of Plaintiff's § 1983 claims against CCS must be dismissed.

### B.    *Negligence Claim*

Finally, CCS asserts that Plaintiff's state law negligence claims should be dismissed because Plaintiff identifies no specific conduct by CCS or any CCS employee which could be in violation of any duty owed by it.[137]  In opposition, Plaintiff contends that she has plead sufficient facts to state a negligence claim, pointing to the factual allegations discussed above.[138]

In the second amended complaint, Plaintiff includes CCS' policy on intake screening and

---

[133] *See Piotrowski*, 237 F.3d at 578.

[134] *Cox*, 430 F.3d at 748–49.

[135] *See Piotrowski*, 237 F.3d at 578.

[136] *Id.*

[137] Rec. Doc. 89-1 at 6.

[138] Rec. Doc. 143 at 5–10.

health care assessment, CCS' chronic disease policy, and CCS' commitment to ensuring that urgent health needs are met."[139] Plaintiff then alleges that CCS failed to create a treatment plan for Decedent, did not monitor his condition, and delayed in responding to Decedent's urgent health needs.[140] Plaintiff describes laboratory tests taken at the hospital that indicate that Decedent's condition "had been progressing for a period of time prior to his admission."[141] Plaintiff asserts that CCS' delayed treatment and failure to abide by its policies were a "principal factor" in Decedent's declining health and ultimate death.[142]

Construing these claims liberally in favor of Plaintiff,[143] Plaintiff has plausibly plead that CCS undertook a duty to provide medical care to Decedent, CCS' actions fell below their standard, and CCS' actions contributed to Plaintiff's worsened condition and ultimately his death. CCS insists that Plaintiff does not explain or meet her burden of proving that CCS actions rise to the level of negligence, but on a motion to dismiss, a Plaintiff need only allege enough facts to raise a claim that is "plausible on its face."[144] The Court finds that Plaintiff's allegations in the second amended complaint raise a plausibly claim against CCS for negligence pursuant to Article 2315. Therefore, the Court will deny CCS' motion to dismiss the negligence claim.

---

[139] *Id.* at 8–9.

[140] *Id.* at 5–10.

[141] *Id.* at 7.

[142] *Id.* at 8.

[143] *Leatherman v. Tarrant Cnty.* Narcotics Intelligence *& Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[144] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

## IV. Conclusion

Based on the foregoing, the Court has determined that Plaintiff has not stated a claim against CCS pursuant to 42 U.S.C. § 1983, but Plaintiff does state a claim for relief under Louisiana Civil Code Article 2315.

Accordingly,

**IT IS HEREBY ORDERED** that CCS' "Motion to Dismiss"[145] is **GRANTED IN PART** and all actions against CCS under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the motion is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA**, this _29th_ day of April, 2019.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[145] Rec. Doc. 146.

23