**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LATASHA RODGERS** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 16-16303** |
| **MARLIN GUSMAN, et al.** | **SECTION: "G" (3)** |

## ORDER AND REASONS

In this litigation, Plaintiff Latasha Rodgers, Tutrix ("Plaintiff"), on behalf of her minor child CJTJ, alleges that Defendants Orleans Parish Prison, Orleans Parish Sheriff Marlin Gusman ("Gusman"), the City of New Orleans (the "City"), Mayor LaToya Cantrell, the New Orleans City Council, Correct Care Solutions, LLC and certain unidentified parties acting under the authority of the Orleans Parish Prison, subjected CJTJ's father ("Decedent"), a pretrial detainee at the Orleans Parish Prison, to excessive force, assaulted and battered Decedent, and acted with deliberate indifference to his medical needs, resulting in Decedent's death, in violation of his and Plaintiff's constitutional rights under the Fourth, Eighth, and Fourteenth Amendments, and Louisiana law.[1] Pending before the Court is Defendants the City, Mayor LaToya Cantrell, and the New Orleans City Council's (collectively, "City Defendants") "Motion for Judgment on the Pleadings and for Summary Judgment."[2] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court will grant the motion.

---

[1] Rec. Doc. 45 at 1–4.

[2] Rec. Doc. 189.

# I. Background

### A.    *Factual Background*

In the complaint, Plaintiff avers that on September 24, 2015, Decedent was a pretrial detainee at the Orleans Parish Prison (the "Prison"). Plaintiff additionally avers that Decedent had been diagnosed with Sickle Cell Disease and Hepatitis C, which was "verified by OPP[3] medical intake form."[4] Plaintiff alleges that since October 2015, Decedent had experienced leg pain and medical complications in the chest and abdomen.[5] According to Plaintiff, however, OPP failed to provide him with his medication or take him to the hospital.[6] In addition, Plaintiff alleges that on October 3, 2015, Decedent was attacked and stabbed in the arm by an inmate, and on another occasion, Decedent was choked by a security guard.[7] Plaintiff avers that on neither occasion was Defendant taken to the hospital.[8]

On November 11, 2015, according to Plaintiff, Decedent experienced a severe sickle cell pain crisis in his abdomen and lower extremity, chest, back, and left leg, but was not taken to the hospital until the next day on November 12, 2015.[9] While Decedent was at University Medical Center, Plaintiff avers, his condition worsened—he became diaphoretic and unresponsive, had

---

[3] Although Plaintiff does not define "OPP," the Court assumes OPP refers to Orleans Parish Prison.

[4] Rec. Doc. 1 at 4.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

problems breathing, and on November 15, 2016, died.[10] Plaintiff alleges that Defendants' conduct demonstrates a "wanton disregard" for Decedent's "serious medical needs."[11]

Plaintiff alleges that Defendants, acting as decisionmakers, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices, or customs and usages that violated the constitutional rights of Decedent and Plaintiff.[12] Specifically, Plaintiff alleges that Defendants violated the Constitution by (1) allowing their deputies to abandon their obligations to protect the people in their direct custody from harm; (2) having a policy, practice, or custom of intentionally suspending, or failing to provide, medication to Decedent; (3) ignoring Decedent's complaint for medical assistance, thereby allowing his severe medical crises to worsen; (4) having deficient staffing, security policies and practices, and inadequate medical treatment; (5) subjecting inmates to unreasonable uses of force against their persons; (6) selecting, retaining, and assigning employees with demonstrable propensities for excess force, violence, and negligence, and other misconduct; (7) failing to train and supervise employees in how to properly administer medication and care for the people in their custody; and (8) condoning and encouraging officers in the belief that they can violate the rights of persons such as Decedent with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.[13]

Plaintiff alleges that Defendants' conduct constitutes a pattern of constitutional violations based on either a deliberate plan by Defendants, or Defendants' deliberate indifference, gross

---

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* at 5.

negligence, or reckless disregard for the safety, security, and rights of Plaintiff and Decedent.[14] Plaintiff claims that as a result of Defendants' conduct, CJTJ lost Decedent's love, comfort, society, consortium, care, affection, support, and enjoyment of life, and has sustained emotional distress.[15]

**B.      *Procedural Background***

Plaintiff filed a complaint on November 10, 2016.[16] On December 12, 2016, Defendant Marlin Gusman filed an answer to the complaint.[17] On February 6, 2017, the Court granted Defendant Orleans Parish Sheriff Office's motion to dismiss.[18] On March 27, 2017, Defendants Mayor Mitch Landrieu and the New Orleans City Council filed a motion to dismiss.[19] On October 16, 2017, the Court denied the motion to dismiss without prejudice and granted Plaintiff leave to amend the complaint to address the deficiencies noted therein.[20]

On November 17, 2017, Plaintiff filed an amended complaint.[21] On July 18, 2018, the Court denied CCS' motion to dismiss without prejudice and granted Plaintiff leave to amend the complaint to address the deficiencies noted therein.[22] On July 18, 2018, the Court also denied Gusman's motion for judgment on the pleadings without prejudice and granted Plaintiff leave to

---

[14] *Id*. at 5–6.

[15] *Id*. at 6.

[16] Rec. Doc. 1.

[17] Rec. Doc. 4.

[18] Rec. Doc. 5.

[19] Rec. Doc. 12.

[20] Rec. Doc. 31.

[21] Rec. Doc. 45.

[22] Rec. Doc. 110.

amend the complaint to address the deficiencies noted therein.[23] Also on July 18, 2018, the Court dismissed both CCS and Gusman's motions for summary judgment without prejudice, with leave to refile if necessary.[24]

On December 26, 2018, Plaintiff filed a second amended complaint.[25] In the second amended complaint, Plaintiff brings the following claims: (1) a wrongful death claim under 42 U.S.C. § 1983; (2) a survival claim under 42 U.S.C. § 1983; (3) a claim for deliberate indifference under 42 U.S.C. § 1983; (4) a negligence claim under Louisiana law; and (5) an assault and battery claim under Louisiana law.[26]

On January 9, 2019, CCS filed a motion to dismiss the second amended complaint.[27] On April 29, 2019, the Court granted the motion in part and dismissed the Section 1983 claims pending against CCS.[28] The Court denied the motion to the extent it sought dismissal of Plaintiff's negligence claims pending against CCS.[29]

On May 7, 2019, Gusman filed a second motion for judgment on the pleadings.[30] On June 17, 2019, the Court denied the motion and granted Plaintiff leave to file an amended complaint to include allegations regarding alleged aggravated assault and battery, which were raised in

---

[23] Rec. Doc. 111.

[24] Rec. Doc. 112.

[25] Rec. Doc. 143.

[26] *Id.* at 11–16.

[27] Rec. Doc. 146.

[28] Rec. Doc. 163 at 23.

[29] *Id.*

[30] Rec. Doc. 165.

opposition to the motion for judgment on the pleadings but not in the pleadings, and would not be barred by the statute of limitations.[31] On June 24, 2019, Plaintiff filed a third amended complaint.[32]

On June 4, 2019, City Defendants filed the instant motion for judgment on the pleadings and for summary judgment.[33] On June 7, 2019, Plaintiff filed an opposition to the motion.[34] On June 21, 2019, with leave of Court, City Defendants filed a reply brief in further support of the motion.[35]

## II. Parties' Arguments

### A.    *City Defendants' Arguments in Support of the Motion*

In support of the motion to dismiss, Defendants argue that Plaintiff's asserted claims against City Defendants are based solely on the allegation that the City's failure to properly fund the Sheriff's operation of OPP caused the Sheriff and CCS to hire the employees who allegedly violated Decedent's constitutional rights and caused his death.[36] However, City Defendants assert that these allegations do not state a plausible claim under 42 U.S.C. § 1983 or state tort law.[37] Therefore, City Defendants assert that all of the claims pending against them should be dismissed.[38]

---

[31] Rec. Doc. 201.

[32] Rec. Doc. 210.

[33] Rec. Doc. 189.

[34] Rec. Doc. 198.

[35] Rec. Doc. 209.

[36] Rec. Doc. 189-1 at 4.

[37] *Id.*

[38] *Id.*

First, City Defendants argue that Plaintiff has failed to state a claim under 42 U.S.C. § 1983 because Plaintiff has not identified a particular policy or custom of City Defendants that caused the alleged constitutional deprivations.[39] City Defendants assert that Plaintiff has not alleged when the purported policy of underfunding went into effect or how long it lasted.[40]

Additionally, City Defendants contend that Plaintiff failed to adequately plead facts to show a causal link between the City's funding policies and the alleged violation of Decedent's constitutional rights.[41] City Defendants argue that Plaintiff's assertion that additional funding would have led the Orleans Parish Sheriff's Office ("OPSO") and CCS to employ "more competent personnel who would not have committed the acts alleged in th[e] complaint" is speculative.[42] City Defendants point out that Plaintiff alleges that the conduct at issue was intentional, not that the incompetency of OPSO and CCS personnel was the reason for Decedent's allegedly inadequate treatment.[43] Therefore, City Defendants argue that "Plaintiff has not plausibly alleged that an unspecified amount of additional funding would have prevented the constitutional violations allegedly committed by OPSO and CCS personnel."[44]

Next, City Defendants argue that Plaintiff does not allege facts that establish deliberate indifference by any City Defendant.[45] City Defendants assert that Plaintiff has not made allegations

---

[39] *Id.* at 8–9 (citing *Monell v. Dept't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)).

[40] *Id.* at 8.

[41] *Id.* at 9.

[42] *Id.* at 10.

[43] *Id.*

[44] *Id.* at 11.

[45] *Id.*

concerning the City Defendants' awareness of particular risks of harm related to the funding of OPP operations, and Plaintiff does not allege any facts which could have put the City, the City Council, or Mayor Landrieu on notice of the risk associated with its alleged funding policy.[46] Indeed, City Defendants point out that Plaintiff does not even allege facts showing that the City Defendants knew the City's funding was inadequate.[47] Therefore, City Defendants argue that Plaintiff's conclusory allegation of deliberate indifference by all defendants is wholly insufficient to state a claim against any one of the City Defendants.[48] Accordingly, City Defendants assert that the Section 1983 claims pending against them should be dismissed because Plaintiff has failed to plead facts establishing any of the elements of a Section 1983 claim.[49]

Finally, City Defendants contend that Plaintiff has not stated a valid state law claim against any of the City Defendants.[50] City Defendants assert that the claims based on the alleged battery are prescribed.[51] Additionally, City Defendants argue that their duty to fund the jail is owed to the Sheriff, not inmates, and Plaintiff has not alleged facts demonstrating that an alleged breach of a duty caused Plaintiff damages.[52]

In the alternative, City Defendants assert that the Court should grant summary judgment dismissing all claims pending against them.[53] City Defendants argue that Plaintiff cannot present

---

[46] *Id.* at 12.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.* at 14.

any evidence establishing an element of her Section 1983 and state law negligence claims based on the City's alleged underfunding of OPP operations.[54] In fact, City Defendants assert that from 2010 through 2016 the yearly funds provided to the Sheriff more than doubled from $23,013,071 to $51,102,831.[55] Moreover, City Defendants argue that Plaintiff has not produced any evidence that the funding was insufficient to support the operation of OPP.[56] Accordingly, City Defendants argue that they are entitled to summary judgment on all claims pending against them.[57]

**B.    *Plaintiff's Arguments in Opposition to City Defendants' Motion***

In response to City Defendants' motion, Plaintiff argues that the "complaint adequately alleges the City Defendants' liability due to underfunding jail operations."[58] Plaintiff asserts that discovery has revealed that the Sheriff bills the City for operations, and the annual billing amounts vary.[59] Plaintiffs contends that "[i]t is entirely possible that the Sheriff 'underbills' for operations because he knows what the City will and will not pay for."[60] Plaintiff argues that City Defendants have not refuted this claim.[61]

Next, Plaintiff refutes City Defendants' assertion that any claims related to the alleged assault and battery have prescribed.[62] Plaintiff asserts that the cause of the injury was continuous,

---

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.* at 15.

[58] Rec. Doc. 198-1 at 3.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.* at 4.

and the prescriptive period did not begin to run until the conduct causing the damages abated.[63] Therefore, Plaintiff asserts that these claims have not prescribed.[64]

Finally, Plaintiff "objects to the summary judgment request that is attached to the Rule 12(c) motion."[65] Plaintiff argues that City Defendants "have not filed a separate document, have not included a statement of undisputed facts or otherwise complied with Rule 56 or the local rules relating to summary judgment."[66] Accordingly, Plaintiff asserts that the motion should be denied.[67]

## C.    *City Defendants' Arguments in Further Support of the Motion*

In reply, City Defendants argue that Plaintiff's speculative claim that it is possible that the Sheriff underbills for operations because he knows what the City will pay for cannot satisfy Plaintiff's obligation to plead a plausible basis for liability against the City Defendants.[68] City Defendants assert that Plaintiff cannot survive judgment on the pleadings by asserting a mere possibility, and Plaintiff has not alleged facts to show that City Defendants underfunded operations of OPP.[69] Additionally, City Defendants contend that Plaintiff has not alleged facts creating a reasonable inference that Decedent's alleged battery and lack of medical care was in any way related to underfunding.[70] Finally, City Defendants argue that Plaintiff has not presented any law or argument to contravene City Defendants' argument that Plaintiff cannot state a claim against

---

[63] *Id*. at 4–5 (citing *South Central Bell Telephone Co. v. Texaco Inc.*, 418 So. 2d 531, 533 (La. 1982)).

[64] *Id*. at 5.

[65] *Id*.

[66] *Id*. at 5–6.

[67] *Id*. at 6.

[68] Rec. Doc. 209 at 1.

[69] *Id*. at 2.

[70] *Id*.

City Defendants because the state law obligating the City to fund OPP was not imposed to benefit inmates.[71] Accordingly, City Defendants argue that they are entitled to judgment on the pleadings.[72]

Alternatively, City Defendants argue that they are entitled to summary judgment and have properly asserted this motion in the same document as the motion for judgment on the pleadings.[73] City Defendants note that they did file a statement of uncontested facts and complied with all of requirements of Rule 56 of the Federal Rules of Civil Procedure.[74] On the other hand, City Defendants contend that Plaintiff has not opposed the motion for summary judgment, or submitted a statement of facts.[75] Furthermore, City Defendants assert that Plaintiff has not produced any evidence to support her claims against City Defendants.[76] Accordingly, City Defendants argue that they are entitled to summary judgment dismissing all of Plaintiff's claims pending against them.[77]

### III. Legal Standard

*A.*     ***Legal Standard for Dismissal Under Federal Rule of Civil Procedure 12(c)***

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[78] "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in

---

[71] *Id.* at 2–3.

[72] *Id.* at 3.

[73] *Id.*

[74] *Id.*

[75] *Id.*

[76] *Id.* at 4.

[77] *Id.*

[78] Fed. R. Civ. P. 12(c).

dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[79] "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[80] On a 12(c) motion, "[p]leadings should be construed liberally," and judgment is "appropriate only if there are no disputed issues of fact and only questions of law remain."[81] Moreover, the Court "may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[82] In lieu of dismissal on a motion for judgement on the pleadings, a district court may grant a plaintiff leave to amend the complaint.[83] If, on a motion under Rule 12(b)(6) or Rule 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion should be treated as one for summary judgment under Rule 56 and all parties must be given an opportunity to present all the material that is pertinent to the motion.[84]

## B.   *Legal Standard for Summary Judgment Under Federal Rule of Civil Procedure 56*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[85] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or

---

[79] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (internal citations omitted).

[80] *Id.* (internal citations omitted).

[81] *Id.* (internal citations omitted).

[82] *Id.*

[83] *Dueling v. Devon Energy Corp.*, 623 F. App'x 127 (5th Cir. 2015).

[84] Fed. R. Civ. P. 12(d).

[85] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

weighing the evidence."[86] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[87] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[88] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[89]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[90] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[91] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[92] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by

---

[86] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[87] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[88] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[89] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[90] *Celotex*, 477 U.S. at 323.

[91] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[92] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

"unsubstantiated assertions," or "by only a scintilla of evidence."[93] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[94]

Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[95] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[96] Ultimately, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[97]

## C.  *Municipal Liability Under Section 1983*

42 U.S.C. § 1983 provides that every "person" who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects, or "causes to be subjected," any person to the deprivation of any federally protected rights, privileges, or immunities shall be civilly liable to the injured party. With respect to a Section 1983 claim against an entity, no liability exists for governmental entities based on vicarious liability or *respondeat superior*.[98] However, the United States Supreme Court held in *Monell v. Department of Social Services of City of New York* that "when execution of a government's policy or custom, whether made by its lawmakers or by those

---

[93] *Little*, 37 F.3d at 1075.

[94] *Anderson*, 477 U.S. at 248.

[95] *Little*, 37 F.3d at 1075.

[96] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[97] *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993).

[98] *Monell*, 436 U.S. at 694.

whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . the government as an entity is responsible under § 1983."[99] Moreover, "[a] § 1983 plaintiff . . . may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action was pursuant to a state 'custom or usage.'"[100] In order to establish a Section 1983 claim against a municipality, the official policy must be the cause and moving force of the constitutional violation.[101] Additionally, the "policymaker must have either actual or constructive knowledge of the alleged policy."[102]

A pattern can be considered tantamount to an official policy if the pattern is "so common and well-settled as to constitute a custom that fairly represents municipal policy."[103] The incidents relied upon must have occurred prior to the alleged misconduct and "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."[104] The prior incidents must point to the specific violation alleged in the case at bar.[105]

Finally, liability may also exist where the action of the policymaker violated a constitutional right or the policymaker failed to act to control its agents when it was "so obvious,

---

[99] 436 U.S. 658, 694 (1978).

[100] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 (1986).

[101] *Monell*, 436 U.S. at 694.

[102] *Cox v. City of Dallas*, 430 F.3d 734, 748–49 (5th Cir. 2005) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

[103] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

[104] *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984) (en banc).

[105] *Peterson*, 588 F.3d at 851 (citing *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir.2005)).

and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] . . . can reasonably be said to have been deliberately indifferent to the need."[106] Deliberate indifference of this sort is a stringent test, and "a showing of simple or even heightened negligence will not suffice" to prove municipal culpability.[107] The single incident exception is a very narrow one that the Fifth Circuit has been reluctant to expand.[108]

## D.    *Negligence Under Louisiana Law*

Plaintiff also asserts that City Defendants were negligent under Louisiana law. Article 2315 states, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it," and that "[d]amages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person." Louisiana courts use the duty-risk analysis to determine recovery under Article 2315.[109] "For liability to attach under the duty-risk analysis, the plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm or damages, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached."[110]

---

[106] *Piotrowski v. City of Houston*, 237 F.3d 567, 571 (5th Cir. 2001) citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984).

[107] *Id*. (citing *Bryan County*, 520 U.S. at 407).

[108] *See Pineda v. City of Houston*, 291 F.3d 325, 334–35 (5th Cir. 2002) ("Charged to administer a regime without *respondeat superior*, we necessarily have been wary of finding municipal liability on the basis of [the single-incident] exception for a failure to train claim.").

[109] *Brown v. City of Monroe*, 48,764 (La. App. 2 Cir. 2/26/14); 135 So. 3d 792, 796 (citing *Barrino v. East Baton Rouge Parish School Bd.*, 96–1824 (La. App. 1 Cir. 06/20/97); 697 So. 2d 27)).

[110] *Dennis v. Wiley*, 09–236 (La. App. 2 Cir. 9/11/09); 22 So. 2d 189 *Hardy v. Bowie*, 98–2821 (La. 9/8/99), 744 So.2d 606, 613.

### E. *Assault and Battery Under Louisiana Law*

The Louisiana Supreme Court has stated, "A harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact, is a battery."[111] An actor is subject to liability to another for assault if the actor intends to cause and does cause the other to anticipate an imminent, and harmful or offensive contact with his or her person, and the other does not effectively consent to the otherwise tortious conduct of the actor.[112] Furthermore, Louisiana courts have held that "a municipality is not liable for damages sustained by a third person because of the torts committed by its police officers while discharging their official duties."[113] Specifically, in *Brown v. City of Shreveport*, the Second Circuit Court of Appeal of Louisiana held that the City of Shreveport was not liable for a battery that took place against the plaintiff while being held in the city jail allegedly caused in part by the negligence of the jailor and police officers.[114]

## IV. Analysis

Here, City Defendants have filed a motion to dismiss under 12(c), or in the alternative, a motion for summary judgment.[115] Plaintiff argues that City Defendants have not properly moved for summary judgment because City Defendants "have not filed a separate document, have not included a statement of undisputed facts or otherwise complied with Rule 56 or the local rules

---

[111] *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987).

[112] Restatement (Third) Torts: Inten. Torts To Persons § 105 (Am. Law. Inst. 2015).

[113] *Brown v. City of Shreveport*, 129 So. 2d 540, 541 (La. Ct. App. 1961) (citing *Martin v. Magee*, 179 La. 913 (La. 1934); *Rush v. Town of Farmerville*, 156 La. 857 (La. 1924); *Joliff v. City of Shreveport*, 144 La. 62 (La. 1918); *542 Jones v. City of New Orleans*, 143 La. 1073 (La. 1918); *Taulli v. Gregory*, 223 La. 195 (1953).

[114] *Id*.

[115] Rec. Doc. 52.

relating to summary judgment."[116] However, Plaintiff's assertion is incorrect because City Defendants did attach a statement of undisputed facts to the motion.[117] Additionally, there is no requirement that a motion for summary judgment be filed in a separate document from a motion for judgment on the pleadings. City Defendants have presented evidence outside the pleadings, namely the City's 2018 Annual Operating Budget.[118] Whenever the parties present evidence outside the pleadings and treat a motion to dismiss as a motion for summary judgment, the nonmovant is entitled to the procedural safeguards of Rule 56.[119] Accordingly, the Court will treat City Defendants' motion as a motion for summary judgment under Rule 56.

All of Plaintiff's claims against City Defendants arise out of their alleged underfunding of OPP. Plaintiff claims that the City Defendants "owed the decedent a duty of care not to underfund the jail."[120] Plaintiff alleges that if OPP had been adequately funded, "there would have been more competent personnel who would not have committed the acts alleged in this complaint, to wit: deputies subjecting inmates to unreasonable use of force, selecting, retaining and assigning employees with demonstrated propensities toward physical force, violence and negligence, and deputies assaulting and battering the decedent."[121]

---

[116] Rec. Doc. 198-1 at 5–6.

[117] Rec. Doc. 189-2.

[118] Rec. Doc. 189-3.

[119] *See Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1284 (5th Cir. 1990) (citing *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 195 (5th Cir. 1988), cert. denied, 488 U.S. 926 (1988) (procedural safeguards sufficient where district court accepted for consideration matters outside the pleadings and the parties knew that the district court could treat the motion to dismiss as a motion for summary judgment)).

[120] Rec. Doc. 210 at 13.

[121] *Id.*

In the instant motion, City Defendants argue that Plaintiff cannot present any evidence establishing that the City provided the Sheriff with inadequate funding to operate OPP, that the funding policy caused any mistreatment to Decedent, or that City Defendants acted with deliberate indifference to Decedent.[122] In response, Plaintiff asserts that discovery has revealed that the Sheriff bills the City for operations, and the annual billing amounts vary.[123] Plaintiffs contends that "[i]t is entirely possible that the Sheriff 'underbills' for operations because he knows what the City will and will not pay for."[124]

The undisputed evidence in the record establishes that from 2010 through 2016 the yearly funds the City provided to the Sheriff more than doubled from $23,013,071 to $51,102,831.[125] Decedent was housed in OPP from September 2015 through November 2015. Plaintiff has not presented any evidence to show that OPP was in fact underfunded during that period. In fact, Plaintiff does not even allege the amount of funding that she claims would have been sufficient. Additionally, Plaintiff has not presented any evidence to show that any funding policy by a City Defendant caused OPSO or CCS employees to mistreat Decedent or that City Defendants should have known that its funding policy was likely to result in mistreatment of inmates.

With respect to the Section 1983 claims, Plaintiff asserts that City Defendants acted with reckless disregard to the constitutional rights of Decedent and acted with deliberate indifference to Decedent's serious medical needs.[126] However, City Defendants are a municipality and local

---

[122] Rec. Doc. 189-1 at 14.

[123] Rec. Doc. 198-1 at 3.

[124] *Id.*

[125] Rec. Doc. 189-3 at 71.

[126] Rec. Doc. 210 at 9–11.

government officials. Plaintiff does not present any evidence that City Defendants were personally involved in the alleged deprivation of Decedent and Plaintiff's constitutional rights. Additionally, Plaintiff does not point to any evidence showing that any policies, practices, or customs of City Defendants resulted in a violation of Decedent's constitutional rights, or how any such policies, practices, or customs constituted the "moving force" of the violation. Therefore, there are no issues of material fact in dispute and City Defendants are entitled to judgment as a matter of law on Plaintiff's Section 1983 claims.

As to the state law negligence claim, Plaintiff asserts that City Defendants "breached their duty of care by not providing adequate medical assistance to [Decedent's] severe chronic medical problem."[127] Even assuming that City Defendants owed Decedent and Plaintiff a duty to adequately fund OPP, Plaintiff has not presented any evidence showing that OPP was in fact underfunded or that any alleged underfunding caused Plaintiff damages. Therefore, there are no issues of material fact in dispute and City Defendants are entitled to judgment as a matter of law on Plaintiff's negligence claim.

Last, Plaintiff asserts that Defendants are liable for assault and battery against Decedent. Plaintiff does not present any evidence to show that any of the City Defendants made harmful or offensive contact with Decedent or intended and caused Decedent to anticipate harmful or offensive contact. Additionally, Plaintiff has not presented any evidence to show that underfunding of the jail caused the alleged assault and battery. Therefore, there are no issues of material fact in dispute and City Defendants are entitled to judgment as a matter of law on Plaintiff's assault and battery claim.

---

[127] Rec. Doc. 143 at 15.

## V. Conclusion

Based on the foregoing, the Court finds that there are no genuine issues of material fact in dispute and City Defendants are entitled to judgment as a matter of law. Accordingly,

**IT IS HEREBY ORDERED** that City Defendant's "Motion for Judgment on the Pleadings and for Summary Judgment"[128] is **GRANTED**.

**NEW ORLEANS, LOUISIANA,** this ‾23rd‾ day of July, 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT JUDGE**

---

[128] Rec. Doc. 189.