# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LATASHA RODGERS** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 16-16303** |
| **MARLIN GUSMAN, et al.** | **SECTION: "G" (3)** |

## ORDER AND REASONS

In this litigation, Plaintiff Latasha Rodgers, Tutrix ("Plaintiff"), on behalf of her minor child CJTJ, alleges that Defendants Orleans Parish Prison, Orleans Parish Sheriff Marlin Gusman ("Gusman"), the City of New Orleans (the "City"), Mayor Mitch Landrieu, the New Orleans City Council, Correct Care Solutions, LLC ("CCS") and certain unidentified parties acting under the authority of the Orleans Parish Prison, subjected CJTJ's father ("Decedent"), a pretrial detainee at the Orleans Parish Prison, to excessive force, assaulted and battered Decedent, and acted with deliberate indifference to his medical needs, resulting in Decedent's death, in violation of his and Plaintiff's constitutional rights under the Fourth, Eighth, and Fourteenth Amendments, and Louisiana law.[1] Pending before the Court is Gusman's "Motion to Exclude Testimony of Plaintiff's Expert Lloyd Grafton."[2] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court will grant the motion.

---

[1] Rec. Doc. 143 at 1–4.

[2] Rec. Doc. 169.

1

## I. Background

*A. Factual Background*

In the second amended complaint, Plaintiff avers that on September 24, 2015, Decedent was a pretrial detainee at the Orleans Parish Prison ("OPP").[3] Plaintiff additionally avers that Decedent had been diagnosed with Sickle Cell Disease and Hepatitis C, which was "verified by OPP medical intake form."[4] Plaintiff alleges that since October 2015, Decedent had experienced leg pain and medical complications in the chest and abdomen.[5] According to Plaintiff, however, OPP failed to provide Decedent with his medication or take him to the hospital.[6] In addition, Plaintiff alleges that on October 3, 2015, Decedent was attacked and stabbed in the arm by an inmate, and on another unidentified occasion, Decedent was choked by a security guard.[7] Plaintiff avers that Decedent was not taken to the hospital on either occasion.[8]

According to Plaintiff, Decedent experienced a severe sickle cell pain crisis in his abdomen and lower extremity, chest, back, and left leg on November 11, 2015, but was not taken to the hospital until the next day on November 12, 2015.[9] While Decedent was at University Medical Center, Plaintiff avers, his condition worsened—he became diaphoretic and unresponsive, had

---

[3] Rec. Doc. 143 at 4.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

problems breathing, and on November 15, 2015, he died.[10] Plaintiff alleges that Defendants' conduct demonstrates a "wanton disregard" for Decedent's "serious medical needs."[11]

### B. Procedural Background

Plaintiff filed a complaint on November 10, 2016.[12] On December 12, 2016, Defendant Marlin Gusman filed an answer to the complaint.[13] On February 6, 2017, the Court granted Defendant Orleans Parish Sheriff Office's motion to dismiss.[14] On March 27, 2017, Defendants Mayor Mitch Landrieu and the New Orleans City Council filed a motion to dismiss.[15] On October 16, 2017, the Court denied the motion to dismiss without prejudice and granted Plaintiff leave to amend the complaint to address the deficiencies noted therein.[16]

On November 17, 2017, Plaintiff filed an amended complaint.[17] On July 18, 2018, the Court denied CCS's motion to dismiss without prejudice and granted Plaintiff leave to amend the complaint to address the deficiencies noted therein.[18] On July 18, 2018, the Court also denied Gusman's motion for judgment on the pleadings without prejudice and granted Plaintiff leave to amend the complaint to address the deficiencies noted therein.[19] Also on July 18, 2018, the Court

---

[10] *Id.*

[11] *Id.*

[12] Rec. Doc. 1.

[13] Rec. Doc. 4.

[14] Rec. Doc. 5.

[15] Rec. Doc. 12.

[16] Rec. Doc. 31.

[17] Rec. Doc. 45.

[18] Rec. Doc. 110.

[19] Rec. Doc. 111.

dismissed both CCS and Gusman's motions for summary judgment without prejudice, with leave to refile if necessary.[20]

On December 26, 2018, Plaintiff filed a second amended complaint.[21] In the second amended complaint, Plaintiff brings the following claims: (1) a wrongful death claim under 42 U.S.C. § 1983; (2) a survival claim under 42 U.S.C. § 1983; (3) a claim for deliberate indifference under 42 U.S.C. § 1983; (4) a negligence claim under Louisiana law; and (5) an assault and battery claim under Louisiana law.[22]

On January 9, 2019, CCS filed a motion to dismiss the second amended complaint.[23] On April 29, 2019, the Court granted the motion in part and dismissed the Section 1983 claims pending against CCS.[24] The Court denied the motion to the extent it sought dismissal of Plaintiff's negligence claims pending against CCS.[25]

On May 7, 2019, Gusman filed a second motion for judgment on the pleadings.[26] On June 17, 2019, the Court denied the motion and granted Plaintiff leave to file an amended complaint to include allegations regarding alleged aggravated assault and battery, which were raised in

---

[20] Rec. Doc. 112.

[21] Rec. Doc. 143.

[22] *Id.* at 11–16.

[23] Rec. Doc. 146.

[24] Rec. Doc. 163 at 23.

[25] *Id.*

[26] Rec. Doc. 165.

opposition to the motion for judgment on the pleadings but not in the pleadings, and would not be barred by the statute of limitations.[27] On June 24, 2019, Plaintiff filed a third amended complaint.[28]

On May 20, 2019, Gusman filed the instant Motion to Exclude Testimony of Plaintiff's Expert Lloyd Grafton.[29] On May 28, 2019, Plaintiff filed an opposition to the motion to exclude.[30]

## II. Parties' Arguments

### A. *Gusman's Arguments in Support of Motion to Exclude*

In the instant motion, Gusman seeks to exclude the testimony of Plaintiff's expert, Lloyd Grafton ("Grafton"), for failure to comply with the requirements of Federal Rule of Civil Procedure 26(a)(2)(B).[31] According to Gusman, Grafton's report recounts the allegations of the Complaint and opines that "There is a standard of care required for all persons while incarcerated."[32] Gusman argues that "Grafton offers no opinion as to whether Decedent's treatment met the appropriate standard of care for treatment of inmates in a correctional facility or otherwise gave rise to deliberate indifference."[33] Furthermore, Gusman asserts that Grafton did not even review the jail medical records of Decedent prior to rendering the report.[34] Because Grafton offers

---

[27] Rec. Doc. 201.

[28] Rec. Doc. 210.

[29] Rec. Doc. 169.

[30] Rec. Doc. 175.

[31] Rec. Doc. 169 at 1.

[32] Rec. Doc. 169-1 at 1.

[33] *Id.* at 3.

[34] *Id.*

5

no opinion as to Gusman's treatment of Decedent, Gusman argues that the report should be stricken and Grafton should not be allowed to testify as an expert.[35]

### B. *Plaintiff's Arguments in Opposition to Gusman's Motion to Exclude*

In response to Gusman's motion, Plaintiff attaches a supplemental report prepared by Grafton, dated May 20, 2019.[36] Plaintiff asserts that Grafton has opined that if Decedent was denied medical care, such a denial of care would be below the accepted standard of care for law enforcement personnel.[37] Plaintiff notes that Grafton states that there is a standard of care required for all persons while incarcerated, but "Grafton has not yet stated that the standard was violated."[38] Additionally, Plaintiff points out Grafton's comment that Decedent was choked by a guard while in custody and did not receive appropriate medical attention afterword.[39] Plaintiff asserts that Grafton simply opines that this would not be an acceptable law enforcement practice, if true.[40] Therefore, Plaintiff asserts that this report is not objectionable and Gusman's motion should be denied.[41]

## **III. Legal Standard**

Federal Rule of Civil Procedure 26(a)(2)(B) states:

Unless otherwise stipulated or ordered by the court, [an expert] disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one

---

[35] *Id.* at 4.

[36] Rec. Doc. 175-2.

[37] Rec. Doc. 175-1 at 3.

[38] *Id*.

[39] *Id.* at 3–4.

[40] *Id.* at 4.

[41] *Id.*

whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

"The expert report should be 'detailed and complete,' stating the testimony that will be presented during direct examination and the reasons therefor."[42]

The Fifth Circuit has affirmed district court decisions to exclude an expert testimony where the initial report did not meet the requirements of Rule 26(a)(2)(B) and a supplemental report was filed after the deadline for disclosure of expert reports.[43] In evaluating whether the district court abused its discretion in excluding expert testimony for failure to comply with the deadlines set forth in a scheduling order, the Fifth Circuit considers four factors: "(1) the importance of the excluded testimony, (2) the explanation of the party for its failure to comply with the court's order, (3) the potential prejudice that would arise from allowing the testimony, and (4) the availability of a continuance to cure such prejudice."[44]

---

[42] *Honey-Love v. United States*, 664 F. App'x 358, 361 (5th Cir. 2016) (citing Fed. R. Civ. P. 26 Advisory Committee's Notes (1993 Amendments).

[43] *Harmon v. Georgia Gulf Lake Charles L.L.C.*, 476 F. App'x 31, 36 (5th Cir. 2012) (citing *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996)).

[44] *Id.* (citing *EEOC v. Gen. Dynamics Corp.*, 999 F.2d 113, 115 (5th Cir.1993)).

## IV. Analysis

In the instant motion, Gusman seeks to exclude the testimony of Plaintiff's expert, Lloyd Grafton, for failure to comply with the requirements of Federal Rule of Civil Procedure 26(a)(2)(B).[45] Because Grafton offers no opinion as to Gusman's treatment of Decedent, Gusman argues that the report should be stricken and Grafton should not be allowed to testify as an expert.[46] In response to Gusman's motion, Plaintiff does not address the deficiencies in Grafton's initial report, but instead relies on a supplemental report prepared by Grafton, dated May 20, 2019.[47]

The November 9, 2017 report states that the following is a statement of the opinions Grafton intends to express at trial:

- After reviewing the limited information furnished me I am unable to form any conclusive opinions to the treatment or mistreatment of Mr. Calvin James Deal by the Orleans Parish Prison Deputies.
- The complaint raises several important issues that concern Mr. Deal while he was in Orleans Parish Prison.
- The complaint states Mr. Deal was denied adequate medical care as well as medication. This would be below the accepted law enforcement standards.
- There is a standard of care required for all persons while incarcerated.
- There was an issue of Mr. Deal being attacked and injured when stabbed while in custody at Orleans Parish Prison.
- Mr. Deal was reported to have been choked and injured by a guard and he did not receive any medical attention afterward. This would not be an acceptable practice by law enforcement personnel.
- These and other charges stated in the Complaint will be examined as I receive further documentation concerning this matter.
- Mr. Calvin James Deal died on September 24, 2015, at University Medical Center while still in the custody of Orleans Parish Prison.[48]

---

[45] Rec. Doc. 169 at 1.

[46] *Id.* at 4.

[47] Rec. Doc. 175-2.

[48] Rec. Doc. 54-2.

It is unclear from the report what Grafton means when he states that he was "unable to form any conclusive opinions to the treatment or mistreatment of" Decedent because Grafton does offer two opinions. First, Grafton opines that a denial of adequate medical care and medication would be below the accepted law enforcement standards. Second, Grafton opines that it would not be an acceptable practice by law enforcement personnel if Decedent were choked and injured by a guard and did not receive any medical attention afterward. However, Grafton does not state any basis for these opinions, as required by Rule 26(a)(2)(B)(i). "The expert report should be 'detailed and complete,' stating the testimony that will be presented during direct examination and the reasons therefor."[49] Grafton's November 9, 2017 report is not complete and does not state the reasons for his opinions. Therefore, it is apparent that the November 9, 2017 report must be excluded because it does not comply with Rule 26(a)(2)(B).

In opposition to the motion, Plaintiff relies on a supplemental report by Grafton dated May 20, 2019. A hearing was held on December 19, 2018, for Plaintiff's counsel to show cause why she should not be sanctioned for her failure to diligently litigate this matter and her failure to comply with Court deadlines.[50] During the December 19, 2018 hearing, Plaintiff's counsel stated that she received microscopic slides and tissue samples from the Orleans Parish Coroner's Office in September 2018, and that her expert witnesses would produce an updated report.[51] To accommodate Plaintiff, the Court extended the deadline for Plaintiff to disclose any expert reports from November 21, 2018 to January 19, 2019.[52] However, the supplemental report upon which

---

[49] *Honey-Love*, 664 F. App'x at 361.

[50] Rec. Doc. 142.

[51] *Id.*

[52] *Id. See also* Rec Doc. 109 at 3; Rec. Doc. 144 at 3.

Plaintiff relies is dated over four months after this extended deadline. Additionally, Plaintiff provides no explanation for her repeated failure to comply with the Court's deadlines.

The Fifth Circuit has affirmed district court decisions to exclude an expert where the initial report did not meet the requirements of Rule 26(a)(2)(B) and a supplemental report was filed after the deadline for disclosure of expert reports.[53] "The purpose of supplementary disclosures is just that—to supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline."[54]

The Court must consider four factors in determining whether to exclude expert testimony for failure to comply with the Court's deadlines: "(1) the importance of the excluded testimony, (2) the explanation of the party for its failure to comply with the court's order, (3) the potential prejudice that would arise from allowing the testimony, and (4) the availability of a continuance to cure such prejudice."[55] First, although the testimony of Grafton may strengthen Plaintiff's case against Gusman, Plaintiff may still rely on other evidence in the record to establish a breach of a duty by Gusman. Second, as discussed above, Plaintiff provides no explanation for her repeated failure to comply with the Court's deadlines. Third, Defendants would be prejudiced by allowing the testimony because it appears that the supplemental report was disclosed after Gusman filed the motion to exclude Grafton's testimony, and it does not appear that Gusman had the opportunity to depose Grafton. Fourth, the Court has already continued trial in this matter on three occasions and continued other deadlines to accommodate Plaintiff and allow time to complete discovery. Additionally, Plaintiff has repeatedly ignored court deadlines and failed to diligently litigate this

---

[53] *Harmon*, 476 F. App'x at 36 (citing *Metro Ford*, 145 F.3d at 324; *Sierra Club*, 73 F.3d at 571).

[54] *Metro Ford*, 145 F.3d at 324.

[55] *Harmon*, 476 F. App'x at 36.

case.⁵⁶ Therefore, while "a continuance would [give Gusman] more time to review the late disclosures, such a measure 'would neither punish [Plaintiff for her] conduct nor deter similar behavior in the future.'"⁵⁷ Accordingly, the Court finds that these factors weigh in favor of excluding Grafton's supplemental report for failure to comply with the Scheduling Order deadlines. Because Plaintiff failed to timely disclose an expert report of Grafton that complies with the requirements of Rule 26(a)(2)(B), the Court will exclude Grafton from testifying at trial.⁵⁸

### IV. Conclusion

Based on the foregoing, the Court finds that Grafton's November 9, 2017 report must be excluded because it does not comply with Rule 26(a)(2)(B). Additionally, the supplemental report was disclosed after the deadline set forth in the Court's Scheduling Order, and the Court will exclude the supplemental report for failure to comply with the Scheduling Order. Accordingly,

**IT IS HEREBY ORDERED** that Gusman's "Motion to Exclude Testimony of Plaintiff's Expert Lloyd Grafton"⁵⁹ is **GRANTED.**

**NEW ORLEANS, LOUISIANA**, this 24th day of July, 2019.

_____
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

⁵⁶ *See* Rec. Doc. 134; Rec. Doc. 142.

⁵⁷ *Harmon*, 476 F. App'x at 38 (citing *Sierra Club*, 73 F.3d at 571; *Bradley v. United States*, 866 F.2d 120, 126 (5th Cir. 1989)).

⁵⁸ *Id.*

⁵⁹ Rec. Doc. 169.