| | |
|---|---|
| **LATASHA RODGERS** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 16-16303** |
| **MARLIN GUSMAN, et al.** | **SECTION: "G" (3)** |

## ORDER AND REASONS

In this litigation, Plaintiff Latasha Rodgers, Tutrix ("Plaintiff"), on behalf of her minor child CJTJ, alleges that Defendants Orleans Parish Prison, Orleans Parish Sheriff Marlin Gusman ("Gusman"), the City of New Orleans (the "City"), Mayor Mitch Landrieu, the New Orleans City Council, Correct Care Solutions, LLC ("CCS") and certain unidentified parties acting under the authority of the Orleans Parish Prison, subjected CJTJ's father ("Decedent"), a pretrial detainee at the Orleans Parish Prison, to excessive force, assaulted and battered Decedent, and acted with deliberate indifference to his medical needs, resulting in Decedent's death, in violation of his and Plaintiff's constitutional rights under the Fourth, Eighth, and Fourteenth Amendments, and Louisiana law.[1] Pending before the Court is Gusman's second "Motion for Summary Judgment."[2] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court will grant the motion in part and deny it in part.

---

[1] Rec. Doc. 143 at 1–4.

[2] Rec. Doc. 167.

1

# I. Background

*A.*     ***Factual Background***

In the second amended complaint, Plaintiff avers that on September 24, 2015, Decedent was a pretrial detainee at the Orleans Parish Prison ("OPP").[3] Plaintiff additionally avers that Decedent had been diagnosed with Sickle Cell Disease and Hepatitis C, which was "verified by OPP medical intake form."[4] Plaintiff alleges that since October 2015, Decedent had experienced leg pain and medical complications in the chest and abdomen.[5] According to Plaintiff, however, OPP failed to provide Decedent with his medication or take him to the hospital.[6] In addition, Plaintiff alleges that on October 3, 2015, Decedent was attacked and stabbed in the arm by an inmate, and on another unidentified occasion, Decedent was choked by a security guard.[7] Plaintiff avers that Decedent was not taken to the hospital on either occasion.[8]

According to Plaintiff, Decedent experienced a severe sickle cell pain crisis in his abdomen and lower extremity, chest, back, and left leg on November 11, 2015, but was not taken to the hospital until the next day on November 12, 2015.[9] While Decedent was at University Medical Center, Plaintiff avers, his condition worsened—he became diaphoretic and unresponsive, had

---

[3] Rec. Doc. 143 at 4.

[4] *Id.*

[5] *Id*.

[6] *Id*.

[7] *Id*.

[8] *Id*.

[9] *Id*.

problems breathing, and on November 15, 2015, he died.[10] Plaintiff alleges that Defendants' conduct demonstrates a "wanton disregard" for Decedent's "serious medical needs."[11]

**B.      *Procedural Background***

Plaintiff filed a complaint on November 10, 2016.[12] On December 12, 2016, Defendant Marlin Gusman filed an answer to the complaint.[13] On February 6, 2017, the Court granted Defendant Orleans Parish Sheriff Office's motion to dismiss.[14] On March 27, 2017, Defendants Mayor Mitch Landrieu and the New Orleans City Council filed a motion to dismiss.[15] On October 16, 2017, the Court denied the motion to dismiss without prejudice and granted Plaintiff leave to amend the complaint to address the deficiencies noted therein.[16]

On November 17, 2017, Plaintiff filed an amended complaint.[17] On July 18, 2018, the Court denied CCS's motion to dismiss without prejudice and granted Plaintiff leave to amend the complaint to address the deficiencies noted therein.[18] On July 18, 2018, the Court also denied Gusman's motion for judgment on the pleadings without prejudice and granted Plaintiff leave to amend the complaint to address the deficiencies noted therein.[19] Also on July 18, 2018, the Court

---

[10] *Id.*

[11] *Id.*

[12] Rec. Doc. 1.

[13] Rec. Doc. 4.

[14] Rec. Doc. 5.

[15] Rec. Doc. 12.

[16] Rec. Doc. 31.

[17] Rec. Doc. 45.

[18] Rec. Doc. 110.

[19] Rec. Doc. 111.

dismissed both CCS and Gusman's motions for summary judgment without prejudice, with leave to refile if necessary.[20]

On December 26, 2018, Plaintiff filed a second amended complaint.[21] In the second amended complaint, Plaintiff brings the following claims: (1) a wrongful death claim under 42 U.S.C. § 1983; (2) a survival claim under 42 U.S.C. § 1983; (3) a claim for deliberate indifference under 42 U.S.C. § 1983; (4) a negligence claim under Louisiana law; and (5) an assault and battery claim under Louisiana law.[22]

On January 9, 2019, CCS filed a motion to dismiss the second amended complaint.[23] On April 29, 2019, the Court granted the motion in part and dismissed the Section 1983 claims pending against CCS.[24] The Court denied the motion to the extent it sought dismissal of Plaintiff's negligence claims pending against CCS.[25]

On May 7, 2019, Gusman filed a second motion for judgment on the pleadings.[26] On June 17, 2019, the Court denied the motion and granted Plaintiff leave to file an amended complaint to include allegations regarding alleged aggravated assault and battery, which were raised in

---

[20] Rec. Doc. 112.

[21] Rec. Doc. 143.

[22] *Id.* at 11–16.

[23] Rec. Doc. 146.

[24] Rec. Doc. 163 at 23.

[25] *Id.*

[26] Rec. Doc. 165.

opposition to the motion for judgment on the pleadings but not in the pleadings, and would not be barred by the statute of limitations.[27] On June 24, 2019, Plaintiff filed a third amended complaint.[28]

On May 20, 2019, Gusman filed a "Motion to Exclude Testimony of Plaintiff's Expert Lloyd Grafton."[29] On July 24, 2019, the Court granted the "Motion to Exclude Testimony of Plaintiff's Expert Lloyd Grafton" for Plaintiff's failure to comply with Federal Rule of Civil Procedure 26(a)(2)(B).[30] On June 3, 2019, CCS filed a "Motion to Exclude or Limit the Testimony of William Anderson," Plaintiff's medical expert.[31] On July 17, 2019, the Court denied the Motion to Exclude or Limit the Testimony of William Anderson.[32]

On May 7, 2019, Gusman filed the instant Motion for Summary Judgment.[33] On May 28, 2019, Plaintiff filed an opposition to the motion.[34] On June 4, 2019, with leave of Court, Gusman filed a reply brief in further support of the motion.[35]

## II. Parties' Arguments

### A. Gusman's Arguments in Support of the Motion for Summary Judgment

In the instant motion for summary judgment, Gusman seeks dismissal of Plaintiff's Section 1983 claim related to alleged deliberate indifference to Decedent's medical condition, and

---

[27] Rec. Doc. 201.

[28] Rec. Doc. 210.

[29] Rec. Doc. 169.

[30] Rec. Doc. 253.

[31] Rec. Doc. 180.

[32] Rec. Doc. 249.

[33] Rec. Doc. 167.

[34] Rec. Doc. 177.

[35] Rec. Doc. 185.

Plaintiff's state law negligence claim for the alleged failure to provide adequate medical treatment to Decedent.[36] Gusman asserts that summary judgment is appropriate because there are no material facts in dispute as to the care Decedent received while he was housed at OPP, Plaintiff's claims do not rise to a level of deliberate indifference, and Plaintiff has failed to show a breach of any duty by Gusman.[37]

In support, Gusman cites the opinions of Defendants' expert, Dr. Richard Inglese that: (1) CCS and its correctional medical staff fully complied with the applicable standards of care in connection with the treatment of Decedent and (2) OPSO correctional staff fulfilled their duties as they related to Decedent's medical care.[38] According to Gusman, Plaintiff's expert, Lloyd Grafton, has not provided an opposing position, stating that he was unable to form any conclusive opinion to the treatment or mistreatment of Decedent.[39]

Additionally, Gusman contends that the expert report of Plaintiff's expert, Dr. William R. Anderson, is insufficient to carry Plaintiff's burden.[40] Gusman asserts that Dr. Anderson's opinion that there were no "objective medical data results, specifically laboratory studies, prior to transfer out of the facility, indicating that no monitoring of the patient's condition was being carried out," is contradicted by the record.[41] Gusman notes that the medical records indicate that a CBC was conducted on October 3, Decedent attended the hematology clinic at University Medical Center

---

[36] Rec. Doc. 167-1 at 1. The instant motion is not directed at Plaintiff's claim related to the assault and battery.

[37] *Id.*

[38] *Id.* at 8.

[39] *Id.* at 8–9.

[40] *Id.* at 9–10.

[41] *Id.* at 9.

on October 29, and OPSO staff had blood drawn and lab work run on November 6, which showed no exacerbation of sickle cell.[42] Gusman asserts that Dr. Anderson's statement that there was a "delay in addressing acute medical issues" is unsupported because Decedent did not submit a single medical request, sick call, or grievance from November 1 until November 12, the date he was sent to University Medical Center.[43]

Gusman argues that Plaintiff's claim related to the medical care received by Decedent does not rise to the level of deliberate indifference.[44] Furthermore, Gusman asserts that Plaintiff cannot meet the high burden under *Monell* to recover against the sheriff in his official capacity.[45] Gusman contends that Plaintiff is unable to produce any evidence of a single incident putting OPSO on notice that it should modify its policies, procedures, and practices to avoid the alleged constitutional violation that led to Decedent's death.[46] Therefore, Gusman argues that there are no material facts in dispute and the Court should grant summary judgment as to Plaintiff's Section 1983 claim regarding deliberate indifference to Decedent's medical condition.[47]

Finally, Gusman asserts that Plaintiff's state law negligence claim should be dismissed.[48] Gusman contends that Plaintiff has no evidence of specific conduct of Gusman or his staff which supports an intentional act or breach of a duty owed to Decedent.[49] Absent any proof that Gusman

---

[42] *Id.*

[43] *Id.* at 9–10.

[44] *Id.* at 11.

[45] *Id.* at 12.

[46] *Id.* at 14.

[47] *Id.* at 15.

[48] *Id.*

[49] *Id.*

or his staff violated the applicable standards of medical care for an inmate in a correctional facility, Gusman contends that the negligence claim must be dismissed.[50]

## B. Plaintiff's Arguments in Opposition to Gusman's Motion for Summary Judgment

In response to Gusman's motion, Plaintiff asserts summary judgment is not appropriate because there are material facts in dispute concerning the medical care of Decedent.[51] Plaintiff contends that the linchpin of Gusman's motion is that CCS rendered appropriate and sufficient medical services to Decedent.[52] However, Plaintiff asserts that Defendants delayed in rendering medical care to Decedent up until November 12, 2015, and the medical records reflect that Decedent was being treated for psychiatric problems, not sickle cell disease.[53] According to Plaintiff, sickle cell disease is only mentioned in the medical records when Decedent complained of pain.[54]

Plaintiff argues that she has raised a genuine issue of material fact that is in dispute as to the deliberate indifference claim.[55] Plaintiff contends that Decedent complained of sickle cell pain from the moment he entered OPP, but CCS did nothing to treat the condition before transferring Decedent to the hospital on November 12, 2015.[56] Plaintiff asserts that officials were fully aware of Decedent's condition, but failed to treat it.[57] Furthermore, Plaintiff notes that there is no

---

[50] *Id.*

[51] Rec. Doc. 177-1 at 3.

[52] *Id.* at 5.

[53] *Id.*

[54] *Id.* at 5–8.

[55] *Id.* at 8.

[56] *Id.*

[57] *Id.*

evidence that officials requested Decedent's prior medical records during his incarceration.[58] Given that Decedent's last sickle cell crisis happened 19 days before his incarceration, Plaintiff contends that the officials' inactions reflect a conscious disregard of Decedent's serious medical needs.[59]

Plaintiff also argues that she has met her burden under *Monell* of establishing a pattern or practice.[60] According to Plaintiff, CCS had a policy of creating a written treatment plan for individuals with chronic diseases, including sickle cell disease.[61] However, Plaintiff contends that Gusman never created a chronic treatment plan for Decedent.[62] Plaintiff notes that several depositions were taken on May 13, 2019, but she has not received the transcripts.[63] Plaintiff states that she cannot complete this section of her brief until the transcripts are received.[64]

Finally, Plaintiff argues that summary judgment is not appropriate on her negligence claim.[65] Plaintiff asserts that Gusman clearly owed a duty to Decedent, and breached that duty by ignoring and not properly treating Decedent's medical condition.[66] Furthermore, Plaintiff contends that this breach caused Decedent's death because he was not sent to the hospital until it was too

---

[58] *Id.*

[59] *Id.* at 8–9.

[60] *Id.* at 9.

[61] *Id.* at 9–10.

[62] *Id.* at 10.

[63] *Id.*

[64] *Id.*

[65] *Id.* at 11.

[66] *Id.*

late.[67] Plaintiff asserts that the risk of harm, namely Decedent's death, was within the scope of the protection of the duty breached.[68] Therefore, Plaintiff contends that the negligence claim should not be dismissed.[69]

## C. Gusman's Arguments in Further Support of the Motion for Summary Judgment

In the reply brief, Gusman argues that Plaintiff has not produced any evidence of wrongdoing by Gusman or the OPSO.[70] Gusman asserts that he cannot be held liable for an alleged breach of CCS' policy.[71] In support, Gusman cites a Fifth Circuit case holding that a municipal actor cannot be held liable for a contractor's failure to follow a policy.[72] Gusman asserts that Plaintiff has not produced a single other instance of harm sufficient to establish the persistent, widespread custom as required by *Monell*, nor has she produced evidence that Gusman was aware of any incident with CCS' policy.[73] Therefore, for the same reasons that this Court dismissed all Section 1983 claims against CCS, Gusman asserts that the Section 1983 deliberate indifference claims against Gusman in his official capacity should also be dismissed.[74]

---

[67] *Id.*

[68] *Id.*

[69] *Id.* at 9.

[70] Rec. Doc. 185 at 1.

[71] *Id.*

[72] *Id.* at 3 (citing *Doe v. United States*, 831 F.3d 309, 318–19 (5th Cir. 2016)).

[73] *Id.*

[74] *Id.*

# III. Legal Standard

### A.    *Legal Standard on a Motion for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[75] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[76] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[77] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[78]

"[A] nonmoving party is not entitled to rest on his pleadings, but must carry his burden of providing evidence of a genuine issue of material fact."[79] "That burden can be met by depositions, answers to interrogatories and admissions on file and affidavits."[80] The Fifth Circuit has "repeatedly held that self-serving affidavits, without more, will not defeat a motion for summary

---

[75] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[76] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[77] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[78] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[79] *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992) (citing *Reese v. Anderson*, 926 F.2d 494, 499 (5th Cir. 1991)); *see also Celotex*, 477 U.S. at 325; *see also Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[80] *Id.* (citing Fed. R. Civ. P. 56(c)).

judgment."[81] However, a nonmovant's deposition testimony is often considered by a court in recognizing that a genuine issue of material fact exists, which precludes summary judgment.[82]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[83] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[84] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[85] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[86] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[87]

---

[81] *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed.Appx. 306, 307 (5th Cir. 2011) (per curiam) (citing *DirectTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005); *United State v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001)).

[82] *See, e.g., Vetter v. Frosch*, 599 F.2d 630 (5th Cir. 1979); *see also, e.g., King*, 974 F.2d at 656 (5th Cir. 1992).

[83] *Celotex*, 477 U.S. at 323.

[84] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[85] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[86] *Little*, 37 F.3d at 1075.

[87] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

**B.**     *Supervisory Liability Under 42 U.S.C. § 1983*

42 U.S.C. § 1983 provides that every "person" who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects, or "causes to be subjected," any person to the deprivation of any federally protected rights, privileges, or immunities shall be civilly liable to the injured party. Plaintiff brings claims against Gusman in his official capacity as the Sheriff of Orleans Parish.[88] "Claims against the Sheriff in his official capacity are treated as claims against the municipal entity he represents."[89]

With respect to a Section 1983 claim against a municipality, no liability exists for governmental entities based on vicarious liability or *respondeat superior*.[90] However, the United States Supreme Court held in *Monell v. Department of Social Services of City of New York* that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . the government as an entity is responsible under § 1983."[91] Moreover, "[a] § 1983 plaintiff . . . may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action was pursuant to a state 'custom or usage.'"[92] In order to establish a Section 1983 claim against a municipality, the official policy must

---

[88] Rec. Doc. 1 at 2–3; Rec. Doc. 210 at 2–3. Plaintiff does not bring a claim against Gusman in his individual capacity.

[89] *Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012)

[90] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693 (1978)).

[91] *Id.* at 694.

[92] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, n.10 (1986).

be the cause and moving force of the constitutional violation.[93] Additionally, the "policymaker must have either actual or constructive knowledge of the alleged policy."[94]

A pattern can be considered tantamount to an official policy if the pattern is "so common and well-settled as to constitute a custom that fairly represents municipal policy."[95] The incidents relied upon must have occurred prior to the alleged misconduct and "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."[96] The prior incidents must point to the specific violation alleged in the case at bar.[97]

Finally, liability may also exist where the action of the policymaker violated a constitutional right or the policymaker failed to act to control its agents when it was "so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] ... can reasonably be said to have been deliberately indifferent to the need."[98] "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened

---

[93] *Monell*, 436 U.S. at 694.

[94] *Cox v. City of Dallas*, 430 F.3d 734, 748–49 (5th Cir. 2005) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

[95] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 578).

[96] *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir.1984) (en banc).

[97] *Peterson*, 588 F.3d at 851 (citing *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir.2005)).

[98] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

negligence will not suffice' to prove municipal culpability."[99] The single incident exception is a very narrow one that the Fifth Circuit has been reluctant to expand.[100]

## C.    *Deliberate Indifference*

The Eighth Amendment protects the right to be free from cruel and unusual punishment.[101] "The Cruel and Unusual Punishment Clause allows an inmate to obtain relief after being denied medical care if he provides there was a 'deliberate indifference to his serious medical needs.'"[102] "Deliberate indifference is an extremely high standard to meet."[103] "Deliberate indifference requires that the official have subjective knowledge of the risk of harm."[104] "To show subjective deliberate indifference, a plaintiff must present evidence: (i) that each defendant had subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn; (ii) that each defendant actually drew that inference; and (iii) that each defendant's response to the risk indicates that the defendant subjectively intended that harm to occur."[105]

## D.    *Negligence Under Louisiana Law*

Plaintiff also asserts that Gusman was negligent under Louisiana law. Article 2315 states, "Every act whatever of man that causes damage to another obliges him by whose fault it happened

---

[99] *Piotrowski*, 237 F.3d at 579 (citing *Bryan County v. Brown*, 520 U.S. 397, 407 (1997)).

[100] *See Pineda v. City of Houston*, 291 F.3d 325, 334–35 (5th Cir. 2002) ("Charged to administer a regime without *respondeat superior*, we necessarily have been wary of finding municipal liability on the basis of [the single-incident] exception for a failure to train claim.").

[101] U.S. Const. Amend. VIII.

[102] *Bias v. Woods*, 288 F. App'x 158, 162 (2008) (citing *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

[103] *Blank v. Eavenson*, 530 F. App'x 364, 368 (5th Cir. 2013) (citing *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

[104] *Id.*

[105] *Id.* (citing *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009)).

to repair it," and that "[d]amages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person." Louisiana courts use the duty-risk analysis to determine recovery under Article 2315.[106] "For liability to attach under the duty-risk analysis, the plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm or damages, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached."[107]

## IV. Analysis

In the instant motion for summary judgment, Gusman seeks dismissal of Plaintiff's Section 1983 claims related to alleged deliberate indifference to Decedent's medical condition and state law negligence for the alleged failure to provide adequate medical treatment to Decedent.[108] Gusman asserts that summary judgment is appropriate because there are no material facts in dispute as to the care Decedent received while he was housed at OPP, Plaintiff's claims do not rise to a level of deliberate indifference, and Plaintiff has failed to show a breach of any duty by Gusman.[109] Accordingly, the Court addresses each of these issues in turn.

---

[106] *Brown v. City of Monroe*, 48,764 (La. App. 2 Cir. 2/26/14); 135 So. 3d 792, 796 (citing *Barrino v. East Baton Rouge Parish School Bd.*, 96–1824 (La. App. 1 Cir. 06/20/97); 697 So. 2d 27)).

[107] *Dennis v. Wiley*, 09–236 (La. App. 2 Cir. 9/11/09); 22 So. 2d 189 *Hardy v. Bowie*, 98–2821 (La. 9/8/99), 744 So.2d 606, 613.

[108] Rec. Doc. 167-1 at 1.

[109] *Id.*

***A.***      ***Section 1983 Claim for Alleged Deliberate Indifference to Decedent's Medical Condition***

In the motion, Gusman argues that Plaintiff's claim related to the medical care received by Decedent does not rise to the level of deliberate indifference.[110] Furthermore, Gusman asserts that Plaintiff cannot meet the high burden under *Monell* because she is unable to produce any evidence of a single incident putting OPSO on notice that it should modify its policies, procedures, and practices to avoid the alleged constitutional violation that led to Decedent's death.[111]

In opposition, Plaintiff argues that there are genuine issue of material fact in dispute as to the deliberate indifference claim because officials were fully aware of Decedent's condition but failed to treat it.[112] Plaintiff also argues that she has met her burden under *Monell* of establishing a pattern or practice.[113] According to Plaintiff, CCS had a policy of creating a written treatment plan for individuals with chronic diseases, including sickle cell disease, but Gusman never created a chronic treatment plan for Decedent.[114]

A plaintiff may establish a "policy or custom" under the *Monell* standard by showing "(1) [an] express policy of violating the Constitution, (2) a widespread practice or custom—even if that custom has not received formal approval by an official decision-making body—or (3) a decision by an individual with express policy-making authority."[115] Here, Plaintiff clearly does not present any evidence to establish that Gusman had an express policy of failing to provide medical

---

[110] *Id.* at 11.

[111] *Id.* at 14.

[112] Rec. Doc. 177-1 at 8.

[113] *Id.* at 9.

[114] *Id.* at 9–10.

[115] *Cardenas v. Lee Cnty., Tex.*, 569 F. App'x 252, 255 (5th Cir. 2014) (citing *Monell,* 436 U.S. at 690–91).

treatment. In fact, Plaintiff alleges the opposite when she cites language from CCS' policies on intake screening, health assessments, and chronic disease treatment. Plaintiff likewise fails to present evidence to establish a specific decision by Gusman to deny medical care to Decedent. Therefore, Plaintiff has not established that the alleged constitutional violation was caused by an official with policy-making authority.[116] Thus, the Court must determine whether Plaintiff has presented evidence to show that Gusman's alleged failure to provide medical care was a widespread practice or custom.

Under Fifth Circuit precedent, a custom may be evidenced by "a persistent, widespread practice of [] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy ... Actions of officers or employees of a municipality do not render the municipality liable under section 1983 unless they execute official policy as above defined."[117] This standard requires that "[the] actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."[118] "Isolated unconstitutional actions by municipal employees will almost never trigger liability,"[119] and "[a] customary municipal policy cannot ordinarily be inferred from single constitutional violations."[120]

---

[116] *Id.* at 256.

[117] *Piotrowski*, 237 F.3d at 579 (quoting *Webster,* 735 F.2d at 842).

[118] *Webster*, 735 F.2d at 842.

[119] *Piotrowski*, 237 F.3d at 578 (citing *Bennett v. City of Slidell,* 728 F.2d 762, 768 n. 3 (5th Cir. 1984)).

[120] *Id.* at 581.

Plaintiff only presents evidence to establish a failure to provide treatment in regard to one person—Decedent. Plaintiff has not pointed to any facts to establish a persistent or widespread failure by Gusman to provide medical treatment. Plaintiff includes zero allegations or evidence to show that Gusman engaged in this behavior before or that Gusman failed to provide treatment to other inmates. Thus, Plaintiff only presents facts to establish one isolated violation. The Fifth Circuit has repeatedly held that "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability."[121] Therefore, there are no genuine issues of material fact in dispute and Gusman is entitled to summary judgment on Plaintiff's Section 1983 claim regarding the alleged failure to provide medical care and deliberate indifference to Decedent's medical condition.

## B.    *Negligence Claim*

Finally, Gusman asserts that Plaintiff's state law negligence claim should be dismissed because Plaintiff lacks proof that Gusman or his staff violated the applicable standards of medical care for an inmate in a correctional facility.[122] In opposition, Plaintiff asserts that Gusman clearly owed a duty to Decedent, and breached that duty by ignoring and not properly treating Decedent's medical condition.[123] Furthermore, Plaintiff contends that this breach caused Decedent's death

---

[121] *Piotrowski*, 237 F.3d at 581 (quoting *Bennett*, 728 F.2d at 768 n. 3; *see also Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 437 (5th Cir. 2008) (finding two instances of unconstitutional conduct insufficient to evince a policy or custom); *Cardenas*, 569 F. App'x at 256 ("These two isolated failures in judgment cannot, however, establish a custom or policy of denying medical care to inmates."); *Arshad ex rel. Arshad v. Congemi*, No. 08-30061, 2009 WL 585633, at *8 (5th Cir. Mar. 9, 2009) (dismissing *Monell* claim for failure to show a "custom" where plaintiffs "point to only one similar previous incident").

[122] Rec. Doc. 167-1 at 15.

[123] Rec. Doc. 177-1 at 11.

because he was not sent to the hospital until it was too late.[124] Plaintiff asserts that the risk of harm, namely Decedent's death, was within the scope of the protection of the duty breached.[125]

Louisiana Revised Statute § 15:760 provides that "[w]here large numbers of prisoners are confined, the proper authorities in charge shall provide hospital quarters with necessary arrangement, conveniences, and attendance, etc." Louisiana courts have recognized a duty of all jailers to provide reasonable medical care to prisoners.[126] "This duty to provide reasonable medical care for prisoners does not require the maintenance of a full hospital at the site of each prison in order to protect an inmate against every medical risk, but does encompass the risk that an inmate will become sick or be injured and require life-saving medical attention."[127]

The Louisiana First Circuit Court of Appeal's decision in *Elsey v. Sheriff of the Parish of East Baton Rouge* is instructive here.[128] There, the plaintiff brought suit against the sheriff after her son died of an asthmatic attack, claiming that the sheriff breached a duty to provide adequate medical treatment to the decedent.[129] During the trial, three inmates testified that the decedent requested medication numerous times and that he was having difficulty breathing for 15 hours before medical assistance was given.[130] To the contrary, three sheriff's deputies testified that the

---

[124] *Id.*

[125] *Id.*

[126] *Elsey v. Sheriff of Par. of E. Baton Rouge*, 435 So. 2d 1104, 1106 (La. App. 1st Cir.), *writ denied Elsey v. Sheriff of E. Baton Rouge Par.*, 440 So. 2d 762 (La. 1983)).

[127] *Id.* (citing *Moreau v. State, Department of Corrections*, 333 So.2d 281 (La. App. 1st Cir. 1976)).

[128] *Id.*

[129] *Id.* at

[130] *Id.* at 1105.

decedent did not make any such requests for medication.[131] The trial court found that the testimony of the sheriff's deputies was more credible than the testimony of the inmates, and entered judgment in favor of the sheriff.[132] On appeal, the Louisiana First Circuit held that the trial court did not err in deciding that the sheriff did not breach the duty owed to the decedent.[133]

As discussed in the Court's Order denying CCS' Motion for Summary Judgment, there are issues of material fact in dispute as to whether there was a delay in treatment and whether the delay contributed to Decedent's death. Gusman, as the Sheriff of Orleans Parish, owed a duty to provide Decedent with reasonable medical care. The issue of whether there was a delay in providing Decedent with medical care for his sickle cell crisis, and whether such a delay contributed to Decedent's death is a factual issue that must be left to the jury. Accordingly, the Court finds that Gusman is not entitled to summary judgment on Plaintiff's negligence claim.

## V. Conclusion

Based on the foregoing, the Court finds there are no genuine issues of material fact in dispute and Gusman is entitled to summary judgment on Plaintiff's Section 1983 claim regarding the alleged failure to provide medical care and deliberate indifference to Decedent's medical condition. Plaintiff has not pointed to any facts to establish a persistent or widespread failure by Gusman to provide medical treatment, as is required to establish supervisory liability under *Monell*.

---

[131] *Id.*

[132] *Id.* at 1107.

[133] *Id.*

However, there are issues of material fact in dispute as to whether there was a delay in treatment and whether the delay contributed to Decedent's death. Therefore, Gusman is not entitled to summary judgment on Plaintiff's negligence claim.

Accordingly,

**IT IS HEREBY ORDERED** that Gusman's second "Motion for Summary Judgment."[134] is **GRANTED IN PART.** Plaintiff's claim that Gusman denied Decedent medical care and acted with deliberate indifference to Decedent's medical condition under 42 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the motion is **DENIED** with respect to Plaintiff's state law negligence claim.

**NEW ORLEANS, LOUISIANA**, this 24th day of July, 2019.


**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[134] Rec. Doc. 167.